## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION
## CRIMINAL ACTION NO. 1:11-CR-00013-TBR-HBB

UNITED STATES OF AMERICA,                                Respondent/Plaintiff,

v.

MOHANAD SHAREEF HAMMADI,                     Movant/Defendant.

### MEMORANDUM OPINION

In 2012, Mohanad Shareef Hammadi pleaded guilty to multiple charges in connection with his involvement in a plot to provide money, weapons, and material support to al Qaeda in Iraq. The Court sentenced him to term of life imprisonment, and the Sixth Circuit Court of Appeals affirmed on direct appeal. Hammadi did not pursue a writ of *certiorari*. Instead, he timely filed a motion to vacate, set aside, or correct his life sentence pursuant to 28 U.S.C. § 2255.

The Court referred that motion to Magistrate Judge H. Brent Brennenstuhl for findings of fact, conclusions of law, and a recommended disposition. In a well-reasoned opinion, the Magistrate Judge concluded that none of Hammadi's arguments merited relief and, therefore, recommended that his motion be denied. Hammadi disagrees, and so objects to the Magistrate Judge's conclusion. With the exception of a single (and, ultimately, insignificant) factual mistake, the Court agrees with the Magistrate Judge's opinion in full. Therefore, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation, [R. 206], **SUSTAINS IN PART** and **OVERRULES IN PART** Hammadi's Objection, [R. 207], and **DENIES** Hammadi's Motion to Vacate, Set Aside, or Correct Sentence, [R. 148].

1

# I.

## A.

The history of this case is long and storied. However, the circumstances leading up Mohanad Shareef Hammadi's indictment and arrest remain undisputed.

In 2009, the Federal Bureau of Investigation launched an investigation of Waad Ramadan Alwan—an Iraqi national living in Bowling Green—after his fingerprints appeared on fragments of an improvised explosive device ("IED") in Iraq. During the investigation, the FBI introduced Alwan to a confidential human source ("CHS"), who met with Alwan and recorded their conversations starting in August 2010. The CHS led Alwan to believe that the undercover government agent was part of a group sending money and weapons to the Mujahidin—Muslims engaged in Jihad, a holy war against infidels—in Iraq. During their conversations, Alwan described his past actions as an insurgent in Iraq to the CHS, including his use of IEDs and sniper rifles against American soldiers.

Between September 23, 2010 and January 10, 2011, Alwan assisted the CHS in sending what Alwan believed to be money and weapons to the Mujahidin several times. By January 11, 2011, Alwan was asking to lead the Bowling Green cell of the CHS's fictional terrorist organization. The CHS instructed Alwan to recruit others, and afterward Alwan approached multiple people whom he suspected of having violent, anti-American views. Several individuals rebuffed his offers to join the cell. Hammadi accepted. Alwan then took Hammadi to meet with the CHS and vouched for Hammadi as an experienced Iraqi insurgent.

In Iraq, as Hammadi would later tell the CHS and the FBI, he had participated in approximately ten IED attacks on American troops and convoys with at least two different cells, including al Qaida. Hammadi had been arrested for one of the IED attacks, but bribed his way free and fled to Syria. Once in Syria, he applied for refugee status in order to immigrate to the United States. On March 1, 2009, in a "Sworn Statement of Refugee Applying for Admission into the United States form," Hammadi answered "no" when asked if he had engaged in terrorist activity before. Presentence Report ("PSR") at 13, ¶¶ 41–42. Similarly, in December 2010, when asked on his application for a green card if he had engaged in terrorist activity, Hammadi answered "no." These two answers represent the conduct charged in Counts 11 and 12 in the Superseding Indictment. *See* R. 62 at 6–7 (Page ID # 334–35).

Hammadi entered the United States in July 2009, initially settling in Las Vegas with the help of a Catholic charity. He had $900 to his name, brought only a carry-on bag filled with belongings, and spoke little

English. He failed to find employment, moving eventually to Bowling Green to work at a poultry factory. Hammadi did so on the recommendation of Alwan, whose family he knew from Iraq and whom he had met in Syria. Hammadi eventually quit his work at the poultry factory, and he claimed to be indigent when Alwan approached him about joining the fictional terrorist cell in January 2011.

For whatever reason, Hammadi agreed to accompany Alwan to a meeting with the CHS on January 25, 2011. At that meeting, the CHS explained the scheme for sending money and weapons to insurgents in Iraq, and Hammadi made recommendations as to how to accomplish their objectives. Then, on January 27, Hammadi and Alwan took $100,000 from the CHS and transported the money to a tractor trailer, believing that it would then find its way to the Mujahidin in Iraq. This conduct violated 18 U.S.C. § 2339A and served as the basis for Count 1. *See* R. 62 (Super. Indictment at 1) (Page ID # 329).

On February 15 and 16, Hammadi and Alwan packed two rocket-propelled grenade launchers ("RPGs"), two machine guns, two boxes of plastic explosives, and two sniper rifles into duffel bags. The CHS informed them that these weapons were intended for al Qaida in Iraq. Hammadi and Alwan then took the weapons and placed them in hidden compartments of another tractor trailer, attempting to send the weapons to terrorists, in violation of 18 U.S.C. §§ 2339A and 2339B. This conduct served as the basis for Counts 2 and 3. *See* R. 62 (Super. Indictment at 1–2) (Page ID # 329–30).

After they delivered the weapons, the CHS told Hammadi and Alwan that they might ship surface-to-air missiles in the future. Hammadi responded with enthusiasm, expressing his support for sending such missiles given that one of his terrorist cells in Iraq had acquired eleven of them. On March 15, the CHS instructed Hammadi and Alwan that they would send two Stinger-missile systems as a test run, and the next day, Hammadi and Alwan loaded the Stingers into another tractor trailer. These actions also violated 18 U.S.C. §§ 2339A and 2339B and made up the basis of Counts 4 and 5. *See* R. 62 (Super. Indictment at 2–3) (Page ID # 330–31). Furthermore, their conspiracy to deliver the surface-to-air missiles violated 18 U.S.C. § 2332g, which the government charged in Count 10. *Id.* at 5–6 (Page ID # 333–34).

Following the delivery of the Stinger missiles, Hammadi and Alwan transported money and weapons—supplied by the CHS and the government—on two other occasions in violation of 18 U.S.C. §§ 2339A and 2339B. This conduct served as the basis for Counts 6, 7, 8, and 9. R. 62 (Super. Indictment at 3–5) (Page ID # 331–33). Hammadi and Alwan also plotted to murder a U.S. Army Captain whom they knew from Iraq, and Hammadi admitted to being a member of the "Tandheem," a common

euphemism for al Qaida in Iraq. PSR at 12, ¶¶ 36–37. During the last delivery on May 25, the FBI arrested Hammadi and Alwan.

*United States v. Hammadi*, 737 F.3d 1043, 1045–46 (6th Cir. 2013).

A federal grand jury indicted Hammadi on the twelve counts discussed above. [R. 62 at 1–7 (Superseding Indictment).] During his initial appearance, Magistrate Judge James D. Moyer appointed James Earhart to represent Hammadi. [R. 17 at 2 (Order of May 31, 2011).] The Government and Hammadi attempted to negotiate a plea agreement for more than a year. When those negotiations broke down, Hammadi entered an open plea as to all counts alleged in the indictment. [R. 91 at 1 (Order of August 22, 2012).] The Court sentenced Hammadi to term of life imprisonment. [R. 115 at 3 (Judgment).] Hammadi appealed that sentence to the Sixth Circuit Court of Appeals, which affirmed in a published decision. He did not seek a writ of *certiorari*, and so his conviction became final in March 2014. [*See* R. 140 at 3 (Memorandum Opinion).]

### B.

Instead, Hammadi timely filed a motion to vacate, set aside, or correct his life sentence pursuant to 28 U.S.C. § 2255. [R. 148 (Motion to Vacate, Set Aside, or Correct Sentence).] Consistent with local practice, and as authorized under 28 U.S.C. § 636(b)(1)(A)–(B), the Court referred that motion to Magistrate Judge H. Brent Brennenstuhl for findings of fact, conclusions of law, and a recommended disposition. [R. 149 at 1–2 (Order of Referral).] The Magistrate Judge held an evidentiary hearing on that motion. [R. 191 (Order of June 16, 2016).] In a well-reasoned opinion, he concluded that none of Hammadi's arguments merited relief and, therefore, recommended that his motion be denied. [R. 206 at 5–37 (Findings of Fact, Conclusions

of Law, and Recommendation).] Hammadi disagrees, and so objects to the Magistrate Judge's opinion. [R. 207 (Objection).]

## II.

It is well settled that this Court must review the objected-to portions of a report and recommendation *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). To merit *de novo* review, an objection to the recommended disposition must be specific. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). An objection is specific when "it 'explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic.'" *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997) (unpublished table decision)). The failure to file specific objections to a magistrate's report generally "constitutes a waiver of those objections." *Carter v. Mitchell*, 829 F.3d 455, 472 (6th Cir. 2016) (quoting *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004)).

## III.

Pursuant to 28 U.S.C. § 2255, Hammadi filed the instant motion to vacate, set aside, or correct his life sentence. In that motion, Hammadi raised a number of questions about his counsel's performance. Those issues spanned from his counsel's performance during the plea-bargaining process through the resolution of his direct appeal.

To warrant relief under § 2255, the movant, such as Hammadi, must establish either (1) that his conviction resulted from "an error of constitutional magnitude," (2) that the sentence imposed was "outside statutory limits," or (3) that "an error of fact or law . . . was so fundamental as to render the entire proceeding invalid." *United States v.*

5

*Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). An ineffective-assistance-of-counsel claim under the Sixth Amendment falls within the first of those three categories. *Id.* (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

To prevail on that claim, the movant must demonstrate (1) that counsel's performance was "deficient" and (2) that he was "prejudiced" as a result. *United States v. Mahbub*, 818 F.3d 213, 230–31 (6th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "Deficient performance means that 'counsel's representation fell below an objective standard of reasonableness.'" *Moreland v. Robinson*, 813 F.3d 315, 328 (6th Cir. 2016) (quoting *Nichols v. Heidle*, 725 F.3d 516, 539 (6th Cir. 2013)). In making that assessment, the movant's attorney enjoys a strong presumption of having "rendered adequate assistance" and of having "made all significant decisions in the exercise of reasonable professional judgment." *Pough*, 442 F.3d at 966 (quoting *Strickland*, 466 U.S. at 690). The Court must "take care to avoid 'second-guessing' strategic decisions that failed to bear fruit." *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Prejudice, in the context of a guilty plea, requires the movant to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord Fitzpatrick v. Robinson*, 723 F.3d 624, 634 (6th Cir. 2013).

In a thorough and thoughtful opinion, the Magistrate Judge concluded that none of Hammadi's ineffective-assistance-of-counsel claims merited relief. [R. 206 at 5–36.]

Hammadi has objected to that disposition. [R. 207 at 4–16.] With the exception of one slip-of-the-pen, the Court agrees with the Magistrate Judge's opinion in full. Therefore, Hammadi's motion to vacate, set aside, or correct his life sentence is denied.

### A.

Hammadi's initial allegations of deficient performance involve Earhart's guidance during the plea-bargaining process. The Court will address those assignments of error one by one. It finds none of them persuasive.

### 1.

To begin, Hammadi claims that Earhart erred by advising him not to proffer with the Government before pleading guilty. [*Id.* at 4–5.] Earhart testified as to why he recommended that course of action. In his professional opinion, Hammadi had no useful information to give, and anything that Hammadi happened to provide might be used to impeach him at trial. [R. 192 at 114–15, 123–24 (Hearing Transcript) (Earhart's Testimony).] After evaluating that testimony, the Magistrate Judge explained that Earhart's decision was "grounded in strategy," and that his "strategy was grounded in extensive experience and a realistic view of how the [plea-bargaining] process generally works." [R. 206 at 12.]

The Court agrees with that reasoning. Earhart is a skilled and capable attorney with more than twenty-eight years of experience practicing criminal law. [R. 192 at 100–01 (Earhart's Testimony).] He weighed the costs and benefits of pursuing a proffer and, in the exercise of his professional judgment, made a strategic choice. [*Id.* at 123–24.] Viewed in the proper context, Earhart's decision to withhold a proffer did not fall outside the wide range of reasonable professional assistance that Hammadi was due.

## 2.

Second, Hammadi faults Earhart for supposedly assuring him that, if he entered an open plea, he would not receive a life sentence. [R. 207 at 6.] Earhart, however, testified that, absent a plea agreement, he would not tell a client anything of the sort. [R. 192 at 102–03 (Earhart's Testimony).] Whatever Hammadi's take might be, [*see* R. 150 at 1, ¶ 1 (Hammadi's Affidavit)], the Magistrate Judge found Earhart's testimony the most credible evidence on the subject, [R. 206 at 8–10]. The Court has no occasion to disturb that finding. *See Christopher v. United States*, 831 F.3d 737, 739 (6th Cir. 2016) ("Faced with starkly different views of the facts, either one of which has ample evidence to support it, 'the factfinder's choice between them cannot be clearly erroneous'" (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985))). Having accepted Earhart's version of events, Hammadi's ineffective-assistance claim as to this issue fails.

## 3.

Last in this line of argument, Hammadi takes issue with Earhart's recommendation to enter a plea instead of pursuing a substantive entrapment defense. [R. 207 at 6–8.] The Magistrate Judge evaluated and rejected that argument. [R. 206 at 12–14.] He made the right call.[1]

The record contains substantial evidence of Hammadi's predisposition to commit terror-related offenses. Take the following examples. During his time in Iraq, Hammadi was actively involved with the Jaysh al Mujahidin and al Qaeda terrorist groups. [R. 104 at 13, ¶ 40 (Presentence Investigation Report).] By his own admission, Hammadi

---

[1] Mohanad Shareef Hammadi points out, correctly, that the Magistrate Judge mistakenly attributed a fingerprint discovered on pieces of an improvised explosive device to him. [R. 207 at 7 (Objection) (quoting R. 206 at 13 (Findings of Fact, Conclusions of Law, and Recommendation)).] But even absent that slip-of-the-pen, the record contains more than enough evidence demonstrating Hammadi's predisposition. The error is, therefore, harmless.

8

participated in no fewer than ten separate attacks on American forces using improvised explosive devices (or "IEDs"). [*Id.*] And the first time he ever held an assault rifle, he used it to fire on an American soldier. [*Id.*] In light of these facts, Hammadi's chances of establishing a valid entrapment defense were (at best) bleak. *See United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010) ("[A] valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity" (quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002))). Accordingly, Earhart's chosen course of action was not outside the boundaries of reasonable professional assistance.

### B.

Next, Hammadi complains about Earhart's pretrial performance. These alleged errors range from Earhart's failure to file two pretrial motions, to his conduct during discovery more generally. Again, the Court will address those issues in turn. In the end, it finds no basis to question the adequacy of Earhart's performance.

### 1.

Hammadi first focuses on Earhart's failure file a motion to suppress various post-arrest confessions based on the lapse of time between his arrest and presentation before a magistrate judge. [R. 207 at 11–12.] The Magistrate Judge found that argument unavailing. [R. 206 at 19–24.] The Court does as well.

18 U.S.C. § 3501(c) establishes a "safe-harbor" for admitting confessions. *United States v. Williams*, 612 F.3d 417, 422 (6th Cir. 2010). Under § 3501(c), a confession is generally admissible if the defendant confessed within six hours of arrest, "so long as it was 'made voluntarily and . . . the weight to be given [it] is left to the jury.'" *Corley v.*

9

participated in no fewer than ten separate attacks on American forces using improvised explosive devices (or "IEDs"). [*Id.*] And the first time he ever held an assault rifle, he used it to fire on an American soldier. [*Id.*] In light of these facts, Hammadi's chances of establishing a valid entrapment defense were (at best) bleak. *See United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010) ("[A] valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity" (quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002))). Accordingly, Earhart's chosen course of action was not outside the boundaries of reasonable professional assistance.

### B.

Next, Hammadi complains about Earhart's pretrial performance. These alleged errors range from Earhart's failure to file two pretrial motions, to his conduct during discovery more generally. Again, the Court will address those issues in turn. In the end, it finds no basis to question the adequacy of Earhart's performance.

### 1.

Hammadi first focuses on Earhart's failure file a motion to suppress various post-arrest confessions based on the lapse of time between his arrest and presentation before a magistrate judge. [R. 207 at 11–12.] The Magistrate Judge found that argument unavailing. [R. 206 at 19–24.] The Court does as well.

18 U.S.C. § 3501(c) establishes a "safe-harbor" for admitting confessions. *United States v. Williams*, 612 F.3d 417, 422 (6th Cir. 2010). Under § 3501(c), a confession is generally admissible if the defendant confessed within six hours of arrest, "so long as it was 'made voluntarily and . . . the weight to be given [it] is left to the jury.'" *Corley v.*

*United States*, 556 U.S. 303, 322 (2009) (alterations in original) (quoting 18 U.S.C. § 3501(c)). However, if the confession occurred before presentment (or a valid waiver of presentment) and more than six hours after arrest, then the Government must explain the necessity for, or reasonableness of, the delay. *Id.* (citing *McNabb v. United States*, 318 U.S. 332 (1943); *Mallory v. United States*, 354 U.S. 449 (1957)).

In this case, Hammadi signed a presentment waiver five-and-a-half hours after his arrest. [*See* R. 201-1 (Waiver of Presentment).] Although Earhart considered filing a motion to suppress at the outset of the case, he decided not to do so after reviewing the evidence against Hammadi. [R. 192 at 141–42 (Earhart's Testimony).] There is nothing unreasonable about that choice. Hammadi signed a waiver within the six-hour period proscribed by § 3501(c), so there were no grounds to suppress his confession on that basis. *Cf. United States v. Davis*, 459 F.2d 167, 170 (6th Cir. 1972) ("It is apparent that the statements were made well within six hours following the federal detention. And since mere delay is the sole basis for the contention that the confession is inadmissible, that contention must fail under § 3501(c)."). Because the failure to make a non-meritorious motion "cannot be said to be deficient," *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004), there is nothing objectionable about Earhart's performance.

### 2.

Hammadi next takes issue with Earhart's failure to object to the allegedly multiplicitous indictment returned against him. [R. 207 at 12.] A multiplicitous indictment is one which charges "a single offense in more than one count." *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017) (quoting *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008)). To determine whether an indictment is multiplicitous, the

Court looks to "whether each charge requires proof of a fact that the other charge does not; if each charge does, then the charges accuse different crimes and are therefore not multiplicitous." *Id.* (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

The Magistrate Judge examined the offenses charged and the pertinent statutory language and held that each charged offense contained an independent element such that the charges were not multiplicitous. [R. 206 at 25–27 (discussing 18 U.S.C. §§ 2332g, 2339A, 2339B).] Having done the same, the Court agrees. Hammadi offers nothing to call into question the correctness of the Magistrate Judge's analysis. Accordingly, Earhart committed no error in failing to object to the indictment on this ground.

### 3.

Next, Hammadi faults Earhart for not sharing all of the audio and video surveillance of Hammadi that Earhart obtained during discovery. [R. 207 at 13–15.] The Magistrate Judge found that objection without merit. [R. 206 at 31.] The Court concurs.

Earhart testified that Hammadi had access to some (though not all) of the audio and video recordings, and that he and Hammadi discussed those recordings (and related transcripts) in detail. [R. 192 at 108, 121 (Earhart's Testimony).] To the extent that Hammadi did not personally review every recording, he, being the subject of the surveillance at issue, "was in the best position to know exactly what happened." *Morris v. United States*, No. 1:12-CR-91-1-HSM-WBC, 2017 WL 1088289, at *7 (E.D. Tenn. Mar. 21, 2017). It was not unreasonable for Earhart to rely, in part, on Hammadi to direct his attention to possible exculpatory evidence. What is more, there is no indication that Earhart overlooked anything of value in those recordings. In this regard, Hammadi has not demonstrated deficient performance or prejudice.

11

**4.**

Fourth, Hammadi blames Earhart for not subpoenaing the telephone records of Amir Dida, a person whom Hammadi supposed was a jailhouse informant. [R. 207 at 14–15.] The Magistrate Judge found no evidentiary support for that claim and, in any event, failed to understand how Dida, even if an informant, possibly affected Hammadi's decision to plead guilty. [R. 206 at 32.] The Court finds no error with either conclusion. Hammadi has not demonstrated that Earhart's failure to subpoena Dida's telephone records fell below an objective standard of reasonableness or resulted in prejudice to him.

**5.**

Likewise, Hammadi claims that Earhart erred by not interviewing the federal agents involved in the investigation and by not calling them to testify at sentencing. [R. 207 at 8–11.] Earhart explained why he made that decision: "I generally believe as a defense attorney that I call witnesses who have favorable information. I'm not aware of any federal agent who is going to take the stand and testify favorably on behalf of [Hammadi]." [R. 192 at 110 (Earhart's Testimony).] The Magistrate Judge credited Earhart's explanation, [R. 206 at 20–21], and this Court does too.

Earhart made a strategic decision, which the Court is mindful not to second-guess. Based on Earhart's decades of experience, he saw no utility in approaching federal law-enforcement officers whose testimony would almost certainly paint a less than flattering portrait of his client. [*See* R. 123 at 57–58 (Sentencing Transcript) (Schneider's Testimony).] Earhart's thinking on that point was sound, and the Court finds nothing unreasonable about his decision.

### 6.

Hammadi also takes issue with Earhart's failure to interview certain character witnesses and to call them to testify at sentencing. [R. 207 at 11.] The Magistrate Judge found no error, in large part because Hammadi did not explain what information these witnesses had to offer. [R. 206 at 21–22.] The Court agrees with that appraisal.

Nothing in the record indicates why it was unreasonable to forego pursuing the testimony of those persons. Despite ample opportunity to explain the significance of such testimony, Hammadi has failed to do so. *Cf. Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) ("[D]efense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant."). Therefore, the Court finds no error of constitutional magnitude on this front.

### 7.

Last on this subject, Hammadi faults Earhart for not interviewing his codefendant, Waad Ramadan Alwan, and for not calling him to testify at sentencing. [R. 207 at 11.] The Magistrate Judge found Earhart's decision "not only reasonable, but . . . strategic." [R. 206 at 22.] The Court is likewise persuaded.

It might be true, as Hammadi argues, that "Alwan had significant evidence regarding payments" from federal agents "to Hammadi, and [of] Hammadi's very poor financial situation." [R. 207 at 11.] If established at trial, facts of that sort could help Hammadi make out a viable entrapment defense, namely, as evidence of possible government inducement of the crime. But, as Earhart recognized, Alwan's testimony could cut the other way too. Had Alwan testified, the Government might have used the opportunity "to bring up [his] knowledge of Hammadi's terrorist activities in Iraq." [R.

206 at 22.] And evidence of that sort, as discussed earlier, goes to show that Hammadi was predisposed to commit the charged offenses. Earhart made a strategic decision, and it was an unreasonable one to make either.

## C.

Shifting his focus to later in the proceeding, Hammadi asserts that Earhart's performance during and after sentencing amounted to ineffective assistance as well. In support, he identifies two instances where Earhart's fitness left, in his opinion, something to be desired. The Court will briefly mention the disputed issues, but ultimately finds that Hammadi has waived them.

### 1.

Hammadi starts by taking aim at the computation of his sentence under the United States Sentencing Guidelines. [R. 207 at 12–13.] The Magistrate Judge discussed Hammadi's various assignments of error in that regard and found them wanting. [R. 206 at 27–31.] Hammadi identifies no mistake with the Magistrate Judge's decision. His objection merely repeats the same arguments in a truncated fashion. It is, therefore, unnecessary to further belabor the point. *See Schwensow v. United States*, No. 08-12241, 2010 WL 1064006, at *1 (E.D. Mich. Mar. 22, 2010) ("An 'objection' that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used" (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991))). Hammadi has waived any potential objection. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review.").

**2.**

Hammadi ends with a claim that Earhart deficiently failed to pursue post-sentencing proffers. [R. 207 at 16.] The Magistrate Judge rejected that claim as time barred, [R. 206 at 34–36], and Hammadi does not challenge the Magistrate Judge's explanation in his objection, [R. 207 at 16]. Accordingly, Hammadi has waived any argument on this issue too.

**D.**

Hammadi's remaining two objections relate to Earhart's performance on appeal. The Court addresses those arguments in turn. None of them call the Magistrate Judge's decision into question.

**1.**

Hammadi first complains that Earhart erred by not taking an appeal from the denial of a motion to suppress certain evidence gathered under the Foreign Intelligence Surveillance Act. [R. 207 at 15–16.] The Magistrate Judge found that assignment of error unavailing. [R. 206 at 33–34.] The Court agrees.

To establish deficient performance of appellate counsel, Hammadi must demonstrate that Earhart "made an objectively unreasonable decision by choosing to raise other issues instead of" the issues he selected, "meaning that issue 'was clearly stronger than issues that [Earhart] did present.'" *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Prejudice, in this context, requires Hammadi to show that there was "'a reasonable probability that, but for his counsel's unreasonable failure to' raise [the] claim on appeal, 'he would have

15

prevailed.'" *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010) (quoting *Robbins*, 528 U.S. at 285).

Hammadi has not made either showing. He has not explained how this Court erred in its resolution of the motion to suppress, much less why he would have prevailed at trial upon remand. [*See* R. 60 (Memorandum Opinion).] Earhart acted in an objectively reasonable manner, and there is no basis to question the adequacy of his representation on this score.

### 2.

Rounding out his objections, Hammadi faults Earhart for not seeking a writ of *certiorari* after the Sixth Circuit Court of Appeals affirmed his sentence on direct appeal. [R. 207 at 16.] The Magistrate Judge concluded that, regardless of the merit of that argument, no ineffective-assistance-of-counsel claim will lie from the failure of counsel to petition for a writ of *certiorari*. [R. 206 at 34.] Under controlling law, the Magistrate Judge is right. "[T]he Constitution does not entitle a criminal defendant to the assistance of counsel for the filing of a petition for certiorari, so counsel's failure to file that petition cannot amount to constitutionally ineffective assistance." *Nichols v. United States*, 563 F.3d 240, 249–50 (6th Cir. 2009) (en banc) (citing *Ross v. Moffitt*, 417 U.S. 600, 617 (1974); *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) (per curiam)). Therefore, Hammadi has not demonstrated that Earhart's omission amounted to deficient performance.

### E.

Having disposed of Hammadi's objections on the merits, the Court must resolve one final procedural issue. "Under the Antiterrorism and Effective Death Penalty Act of

1996, there can be no appeal from a final order in a § 2255 proceeding" in the absence of a "certificate of appealability." *Welch v. United States*, ⸺ U.S. ⸺, ⸺, 136 S. Ct. 1257, 1263 (2016) (citing 28 U.S.C. § 2253(c)(1)). To obtain a certificate of appealability, the movant must "make a substantial showing that [he has] been denied a constitutional right." *Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013) (citing 28 U.S.C. § 2253(c)(2)). Such a "substantial showing" requires the movant to "demonstrate that 'jurists of reason could disagree with the [Court's] resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Kissner v. Palmer*, 826 F.3d 898, 901 (6th Cir. 2016) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)).

The Magistrate Judge saw no reason to recommend that a certificate of appealability should issue as to any claim raised in Hammadi's motion. [R. 206 at 17–18, 32, 36.] The Court concurs. Because reasonable jurists could not find the resolution of any claim in Hammadi's motion "debatable or wrong," no certificate of appealability shall issue.

**IV.**

The Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation, [R. 206], **SUSTAINS IN PART** and **OVERRULES IN PART** Hammadi's Objection, [R. 207], and **DENIES** Hammadi's Motion to Vacate, Set Aside, or Correct Sentence, [R. 148].

A Certificate of Appealability is **DENIED** as to each claim asserted in Hammadi's Motion to Vacate, Set Aside, or Correct Sentence, [R. 148].

A separate order and judgment shall issue.

Date:

cc: Counsel of Record

18